1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRANDON A. PINOLA,

          Petitioner,

   v.

STATE OF CALIFORNIA.

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. C 12-06050 EJD (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

     Petitioner has filed a <u>pro se</u> petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction.  For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

**BACKGROUND**

     On March 11, 2010, Petitioner was found guilty by a jury in Mendocino County Superior Court of first degree murder of Gerald Knight, (Cal. Pen. Code § 187, subd. (a)).[1]  Petitioner was sentenced to twenty-five years to life in state prison, plus a two-year determinative term for an "on-bail" enhancement.

---

[1]Petitioner's codefendant, Alva Reeves, was also convicted of the crime in a joint trial.

1    Petitioner appealed his conviction, and the state appellate court affirmed on

2    May 7, 2012.  (Ans. Ex. 6.)  The state high court denied review on August 8, 2012.

3    (Id., Ex. 8.)

4        Petitioner filed the instant federal habeas petition on November 8, 2012.

5

6                              **FACTUAL BACKGROUND**

7        The California Court of Appeal summarized the facts as follows:

8        Gerald Knight was known to be a "track person," an alcoholic who
         lived in a small homeless community along the abandoned railroad
9        tracks in Ukiah.  Defendant Reeves and Knight were a couple.
         Reeves often hung out and drank with Knight and other "track
10       people."

11       On the afternoon of the murder, while Reeves was with him, Knight
         went to a nearby bank with his friends and they gave him $80.  He
12       put the money in his left pocket.  Later Reeves and Knight returned
         to the tracks, where they were joined by defendant Pinola and
13       offered him a beer.  Pinola spent the day drinking.  He eventually left
         to look for his girlfriend and shower, but he later returned to the
14       tracks and drank another couple of beers with Reeves and Knight.
         When Reeves and Knight started arguing about a woman, Pinola left
15       for a nearby bar because he "didn't want to hear any drama."

16       When Pinola was drinking beer at the bar, Reeves came in and
         invited him back to the tracks.  Reeves promised Pinola free beer and
17       claimed he was going to "kick Gerald Knight's ass."  Expecting
         some free entertainment, Pinola returned to the tracks with Reeves.
18       Knight and Reeves resumed arguing.  At some point Knight began
         putting things in his backpack, as if he were going to leave.
19       According to Pinola, that is when Reeves grabbed an object and hit
         Knight in the face with it.  Knight stumbled and fell to the ground.
20       Reeves viciously and repeatedly punched and kicked Knight while
         he was down.

21
         Reeves and Pinola returned to the bar, and went directly to the men's
22       room to clean themselves up.  Reeves was wearing Knight's
         backpack.  While Pinola was wiping blood off his shoe and Reeves
23       was cleaning his hands and face with paper towels, customer David
         McCarty entered the restroom.  Reeves looked "ruffled up" and
24       seemed a little frantic about cleaning up and checking himself over.
         McCarty said that it looked like the two had been in a fight.  Pinola
25       responded, "yeah, we really messed him up," or "we really fucked
         him up," and made a kicking gesture as if he were stomping on
26       someone who was down.

27       After they cleaned up, Reeves and Pinola ordered a pitcher of beer
         and sat at a back table.  Pinola had $60 or $70 in his pocket, even
28       though he later told police he was broke the night of the murder.

1

2

3

After a while, Reeves walked up to Aaron Wear, a complete stranger, and told Wear that he had just killed someone by the railroad tracks. Reeves showed Wear his hands, which looked "beaten up," and there was blood on his shirt.

4

5

6

7

Knight's body was found on the tracks the next morning. His throat had been slit, most likely with a piece of broken glass. There were numerous contusions and lacerations to his head and neck, multiple hemorrhages into and under his skull, and two broken ribs on each side of his body. The causes of death were blunt force trauma to the head and a laceration of his jugular vein and carotid artery. Knight's pockets had been pulled out and his cash was gone. A few days later Knight's backpack was found in the bar.

8

9

DNA from blood found on Reeves's and Pinola's shoes matched Knight's DNA profile. Bloody footprints on the back of Knight's pants were consistent with shoes seized from Pinola, but not Reeves.

10

*Reeves's Defense*

11

12

13

14

15

Reeves argued that he was too drunk and psychologically impaired to form the requisite state of mind for murder. Moreover, it was Pinola who killed Knight and he was trying to pin it on Reeves. Neuropsychologist Eugene Couture, Ph.D. testified that Reeves suffered from dementia caused by a severe head injury in 1990, an ongoing seizure disorder, and a long history of substance abuse. Dr. Couture's testing also indicated antisocial personality disorder and a significant impairment of Reeves's ability to organize and plan his actions.

16

*Pinola's Defense*

17

18

19

20

Pinola maintained that it was Reeves, not he, who murdered Knight. He testified that he tried to pull Reeves off of Knight during the fight, but gave up when Reeves elbowed him and forced him to let go. Pinola denied that he hit or kicked Knight. Pinola watched Reeves beat Knight for three or four minutes, then left and returned to the bar. As he was leaving he saw Reeves flip Knight onto his belly, pull back his hair and make a motion with something he was holding in his hand.

21

22

Although Pinola told the police otherwise, he "had an idea" that Knight was dead when he left the tracks.

23

24

25

Reeves followed Pinola to the bar, where they cleaned themselves up in the bathroom, when McCarty came in and asked if the two had been in a fight, Pinola said that "he," meaning Reeves – not "we" – had "kicked the shit out of him." Then Reeves and Pinola shared a pitcher of beer.

26

(Ans. Ex. 6 at 1-3.)

27

///

28

///

1

**DISCUSSION**

2     I.     <u>**Standard of Review**</u>

3              This Court may entertain a petition for a writ of habeas corpus "in behalf of a

4     person in custody pursuant to the judgment of a State court only on the ground that

5     he is in custody in violation of the Constitution or laws or treaties of the United

6     States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any

7     claim that was adjudicated on the merits in state court unless the state court's

8     adjudication of the claim: "(1) resulted in a decision that was contrary to, or

9     involved an unreasonable application of, clearly established Federal law, as

10    determined by the Supreme Court of the United States; or (2) resulted in a decision

11    that was based on an unreasonable determination of the facts in light of the evidence

12    presented in the State court proceeding." 28 U.S.C. § 2254(d).

13             "Under the 'contrary to' clause, a federal habeas court may grant the writ if

14    the state court arrives at a conclusion opposite to that reached by [the Supreme]

15    Court on a question of law or if the state court decides a case differently than [the]

16    Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529

17    U.S. 362, 412-13 (2000). The only definitive source of clearly established federal

18    law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the

19    Supreme Court as of the time of the state court decision. <u>Williams</u>, 529 U.S. at 412;

20    <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be

21    "persuasive authority" for purposes of determining whether a state court decision is

22    an unreasonable application of Supreme Court precedent, only the Supreme Court's

23    holdings are binding on the state courts and only those holdings need be

24    "reasonably" applied. <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir.), <u>overruled</u>

25    <u>on other grounds by</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003).

26             "Under the 'unreasonable application' clause, a federal habeas court may

27    grant the writ if the state court identifies the correct governing legal principle from

28    [the Supreme Court's] decisions but unreasonably applies that principle to the facts

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.  "Under § 2254(d)(1)'s

2  'unreasonable application' clause, . . . a federal habeas court may not issue the writ

3  simply because that court concludes in its independent judgment that the relevant

4  state-court decision applied clearly established federal law erroneously or

5  incorrectly." <u>Id.</u> at 411.  A federal habeas court making the "unreasonable

6  application" inquiry should ask whether the state court's application of clearly

7  established federal law was "objectively unreasonable." <u>Id.</u> at 409.  The federal

8  habeas court must presume correct any determination of a factual issue made by a

9  state court unless the petitioner rebuts the presumption of correctness by clear and

10  convincing evidence.  28 U.S.C. § 2254(e)(1).

11      The state court decision to which Section 2254(d) applies is the "last

12  reasoned decision" of the state court.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-

13  04 (1991); <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there

14  is no reasoned opinion from the highest state court considering a petitioner's claims,

15  the court "looks through" to the last reasoned opinion.  <u>See</u> <u>Ylst</u>, 501 U.S. at 805.  In

16  this case, the last reasoned opinion is that of the California Court of Appeal.  (Ans.

17  Ex. 6.)

18      The Supreme Court has vigorously and repeatedly affirmed that under

19  AEDPA, there is a heightened level of deference a federal habeas court must give to

20  state court decisions.  <u>See</u> <u>Hardy v. Cross</u>, 132 S. Ct. 490, 491 (2011) (per curiam);

21  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 783-85 (2011); <u>Felkner v. Jackson</u>, 131 S. Ct.

22  1305 (2011) (per curiam).  As the Court explained:  "[o]n federal habeas review,

23  AEDPA 'imposes a highly deferential standard for evaluating state-court rulings'

24  and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Id.</u> at

25  1307 (citation omitted).  With these principles in mind regarding the standard and

26  limited scope of review in which this Court may engage in federal habeas

27  proceedings, the Court addresses Petitioner's claims.

28  ///

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.12\06050Pinola_denyHC.wpd                    5

II.    **Claims and Analysis**

Petitioner claims the following as grounds for federal habeas relief: (1) the trial court erred by instructing the jury that his testimony required supporting evidence; (2) the trial court erred in admitting evidence of a prior bad act; (3) the trial court erred by instructing the jury that Petitioner could be found "equally guilty" as an aider and abettor; and (4) cumulative error.

A.    **Jury Instruction Claims (1 and 3)**

1.    **Instruction Regarding Supporting Evidence (Claim 1)**

Petitioner's first claim is that he was denied his right to present a defense by the trial court's instruction to the jury that Petitioner's testimony required supporting evidence.

The specific instruction which Petitioner challenges is CALCRIM No. 301, which the state appellate court cited as follows:

> "Except for the testimony of Brandon Pinola, which requires supporting evidence, the testimony of only one witness can prove any fact.  Before you conclude that the testimony of one witness proves a fact, you should carefully review all of the evidence."  The court went on to instruct the jury on conflicts in evidence, evidence admitted for a limited purpose, prior statements by defendants, impeachment evidence, and expert and lay testimony.
>
> ...
>
> "[T]o the extent that Brandon Pinola gave testimony that tends to incriminate Alva Reeves it should be viewed with care and caution. This does not mean, however, that you may arbitrarily disregard that testimony.  You should give that testimony the weight you think it deserves after examining it with care and caution and in light of all the evidence in the case. [¶] Before you may consider the testimony of Brandon Pinola as evidence against the defendant Alva Reeves regarding the crimes of murder and/or manslaughter, you must decide whether Brandon Pinola was an accomplice in those crimes. ...[¶] If you decide that Brandon Pinola was not an accomplice, then supporting evidence is not required and you should evaluate his testimony as you would that of any other witness.  [¶] If you decide that Brandon Pinola was an accomplice, then you may not convict the defendant of murder or manslaughter based on his testimony alone.  You may use the testimony of an accomplice to convict the defendant only if:  [¶] 1) The accomplice's testimony is supported by other evidence that you believe;  [¶] 2) That supporting evidence is independent of the accomplice's testimony;  [¶] 3) That supporting evidence tends to connect the defendant to the commission of the

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1
2
3
4
5

crime or crimes.  [¶] Supporting evidence, however, may be slight.
It does not need to be enough by itself to prove that the defendant is
guilty of the charged crime and it does not need to support every fact
about which the accomplice testified.  On the other hand, it is not
enough if the supporting evidence merely shows that a crime was
committed or the circumstances of its commission.  The supporting
evidence must tend to connect the defendant to the commission of
the crime."

6

(Ans. Ex. 6 at 4-5.)

7

Respondent contends that this claim was forfeited by Petitioner's failure to

8

object or by failing to request that a clarifying instruction be given at trial.  The state

9

appellate court agreed, and then also rejected the claim on the merits.

10
11
12
13
14
15
16

Pinola argues that CALCRIM No. 301 erroneously informed the jury
his testimony required corroboration in all circumstances, and that
the error was not cured by the later instruction that corroboration was
not required if the jury found he was *not* an accomplice because "this
instruction does not apply until the jury first determined that a
witness is not an accomplice, but pursuant to CALCRIM No. 301 the
jury in this case would have required other evidence supporting Mr.
Pinola's testimony before the jury could have decided he was not an
accomplice."  Therefore, he asserts the court should have modified
CALCRIM No. 301 to say "the testimony of only one witness can
prove any fact, except that any testimony of Brandon Pinola *which
incriminates Alva Reeves* requires supporting evidence before you
can consider that testimony against Mr. Reeves."  (Italics added.)

17
18
19
20
21
22
23
24

The People contend, correctly, that Pinola forfeited this contention
by failing to object to CALCRIM No. 301.  "Generally, "[a] party
may not complain on appeal that an instruction correct in law and
responsive to the evidence was too general or incomplete unless the
party has requested appropriate clarifying or amplifying language.""'
(*People v. Samaniego* (2009) 172 Cal.App.4th 148, 1168
(*Samaniega*); *People v. Tuggles* (2009) 179 Cal.App.4th 339, 364.)
Pinola is not arguing that CALCRIM No. 301 is an incorrect
statement of the law, but rather claims that it was misleading in the
circumstances without additional language clarifying that it applied
only to Pinola's testimony that incriminated Reeves.  To preserve
this claim for appeal, Pinola was required to request clarifying
language at trial.  (*Ibid.*; see also *People v. Spurlock* (2003) 114
Cal.App.4th 1122, 1130.)  He did not.

25
26
27
28

Nonetheless, we are satisfied that any possible ambiguity introduced
by the instruction did not implicate Pinola's due process rights.
""'"[A] single instruction to a jury may not be judged in artificial
isolation, but must be viewed in the context of the overall charge.'"
[Citation.] If the charge as a whole is ambiguous, the question is
whether there is a "'reasonable likelihood that the jury has applied
the challenged instruction in a way' that violates the Constitution."'
[Citation.] (*People v. Huggins* (2006) 38 Cal.4th 175, 192; *People v.*

1

> *Letner* (2010) 50 Cal.4th 99, 186.)  Here, shortly after it gave
> CALCRIM No. 301, the court instructed the jurors that they must
> decide whether Pinola was an accomplice before they considered his
> testimony as evidence against Reeves.  It also explained that "If you
> decide that Brandon Pinola was not an accomplice, then supporting
> evidence is not required and you should evaluate his testimony as
> you would that of any other witness."  The instructions, as a whole,
> adequately clarified that the corroboration requirement applied only
> to testimony that was unfavorable to Reeves, and only if the jurors
> found he was an accomplice.  No reasonable juror would have
> engaged in the mental gymnastics required to interpret CALCRIM
> No. 301 as meaning they could not accept Pinola's denial that he was
> an accomplice unless it was corroborated by some other evidence.
> Moreover, there was substantial evidence that corroborated Pinola's
> testimony that it was Reeves, not him, who killed Knight – e.g.,
> Reeve's bloody clothes and injured hands, Knight's DNA on his
> shoes, his possession of Knight's backpack, and his statement to a
> stranger in the bar that he had just killed someone.

(Ans. Ex. 6 at 5-6.)

In reviewing an ambiguous instruction, the inquiry is not how reasonable

jurors could or would have understood the instruction as a whole; rather, the court

must inquire whether there is a "reasonable likelihood" that the jury has applied the

challenged instruction in a way that violates the Constitution.  See Estelle v.

McGuire, 502 U.S. at 72 & n.4; Boyde v. California, 494 U.S. 370, 380 (1990);

Ficklin v. Hatcher, 177 F.3d 1147, 1150-51 (9th Cir. 1999) (harmless error when

certain that jury did not rely on constitutionally infirm instruction).  In order to show

a due process violation, the defendant must show both ambiguity and a "reasonable

likelihood" that the jury applied the instruction in a way that violates the

Constitution, such as relieving the state of its burden of proving every element

beyond a reasonable doubt.   Waddington v. Sarausad, 555 U.S. 179, 190-191 (2009)

(internal quotations and citations omitted).

Furthermore, the instruction may not be judged in artificial isolation, but must

be considered in the context of the instructions as a whole and the trial record.  See

Estelle, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in

the context of the overall charge to the jury as a component of the entire trial

process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v.

United States District Court

For the Northern District of California

1   Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th

2   Cir.1988)

3         A determination that there is a reasonable likelihood that the jury has applied

4   the challenged instruction in a way that violates the Constitution establishes only

5   that an error has occurred.[2]  See Calderon v. Coleman, 525 U.S. 141, 146 (1998).  If

6   an error is found, the court also must determine that the error had a substantial and

7   injurious effect or influence in determining the jury's verdict, see Brecht v.

8   Abrahamson, 507 U.S. 619, 637 (1993), before granting relief in habeas

9   proceedings.  See Calderon, 525 U.S. at 146-47.

10        Here, Petitioner has failed to show that there was a "reasonable likelihood"

11  that the jury applied the challenged instruction in a way that violates the

12  Constitution.  The state court properly reviewed the challenged instruction in the

13  context of the overall charge to the jury.  See Estelle, 502 U.S. at 72.  Here, the

14  corroboration instruction regarding Petitioner's testimony was qualified with the

15  directive that the jury must first decide whether or not Petitioner was an accomplice

16  in those crimes.  See supra at 6.  The instructions thereafter very clearly defined the

17  parameters for evaluating his testimony: "If you decide that Brandon Pinola was not

18  an accomplice, then supporting evidence is not required and you should evaluate his

19  testimony as you would that of any other witness.  [¶]  If you decide that Brandon

20  Pinola was an accomplice, then you may not convict the defendant [Reeves] of

21  murder or manslaughter based on his testimony alone."  Id.  There was nothing

22  ambiguous about the instructions that would lead the jury to believe that they had to

23  completely disregard Petitioner's testimony without corroborating evidence.

24  Furthermore, as pointed out by the state court, the jury could certainly consider

25  Petitioner's testimony because there was substantial evidence that corroborated his

26  ─────────────────

27        [2]A "reasonable likelihood" is lower than the "more likely than not" standard
    but higher than a mere "possibility."  Polk v. Sandoval, 503 F.3d 903, 910 (9th Cir.

28  2007).

United States District Court

For the Northern District of California

assertion that Reeves killed Knight, "e.g., Reeve's bloody clothes and injured hands, Knight's DNA on his shoes, his possession of Knight's backpack, and his statement to a stranger in the bar that he had just killed someone." Id. at 8. Because there was no error, the Court need not determine whether an error was harmless under Brecht, 507 U.S. at 637. Accordingly, the state court's rejection of this claim was not contrary to, or involved an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

2.    **Instruction for Aider and Abettor Liability (Claim 3)**

Petitioner also claims that the jury instruction regarding aider and abettor liability, CALCRIM No. 400, violated due process because it instructed the jury that an aider and abettor is "equally guilty" as the direct perpetrator, and the trial court failed to sua sponte inform the jury that he could be guilty of a lesser offense. Respondent first asserts that because Petitioner failed to object to the instruction at trial, this claim is procedurally defaulted. The state court noted the lack of objection and cited the instruction given at trial:

> Without objection the trial court gave the following general instruction on aiding and abetting: "A person may be guilty of a crime in two ways: [¶] 1) He or she may have directly committed the crime. I will call that person the perpetrator. [¶] 2) He or she may have aided or abetted a perpetrator, who directly committed the crime. [¶] A person is equally guilty of the crime whether he or she committed it personally or aided or abetted the perpetrator who committed it." (CALCRIM No. 400.)

(Ans. Ex. 6 at 7.)

The state court also concluded that Petitioner had forfeited this claim:

> Because the version of CALCRIM No. 400 given was generally an accurate statement of the law, even if arguably misleading in this case, Pinola was obligated to request a clarification or modification in the trial court and forfeited the contention by not doing so. (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1163; *People v. Lopez*, *supra*, 198 Cal.App.4th at pp. 1118-1119; *People v. Tuggles*, *supra*, 179 Cal.App.4th at p. 364.)

(Id. at 8.)

///

United States District Court
For the Northern District of California

Even assuming that the claim was not procedurally defaulted, Respondent asserts that Petitioner has failed to state a federal claim.  Respondent is correct that the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998); Turner, 63 F.3d at 819 (citing Bashor v. Riley, 730 F.2d 1228, 1240 (9th Cir.), cert. denied, 469 U.S. 838 (1984)); cf. Vickers v. Ricketts, 798 F.2d 369, 371 (9th Cir. 1986) (where evidence supports lesser-included-offense instruction in capital case, due process requires that court give instruction sua sponte), cert. denied, 479 U.S. 1054 (1987).  However, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule."  Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d at 1240).  Solis suggests that there must be substantial evidence to warrant the instruction on the lesser included offense.  See Solis, 219 F.3d 929-30 (no duty to instruct on voluntary manslaughter as lesser included offense to murder because evidence presented at trial precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice).  Here, the jury was in fact instructed on the lesser offense of second degree murder and manslaughter.  (Trav., Ex. 1 at 35, fn. 8.) Therefore, the only issue is whether the trial court was required to give further clarifying instructions.

Even if we assume that the trial court erred in failing to do so, the state court reasonably concluded that any error was harmless:

> Moreover, Pinola was not prejudiced.  He contends the jury could have found he did not premeditate and deliberate the killing, "but rather just got in a couple of kicks on the spur of the moment," and was therefore guilty of no more than second degree murder.  But the jury was properly instructed that, to prove a defendant was an aider and abettor, the People must prove the perpetrator intended to commit the crime and that the defendant intended to aid and abet the perpetrator in committing that crime.  It was also instructed that each of the homicide instructions, including the instructions on intent,

1

2

3

4

5

6

> applied separately to Pinola and Reeves.  Finally, the jury was instructed that "If you conclude that the defendant was intoxicated at the time of the alleged crime, you may consider this evidence in deciding whether the defendant: [¶] A. Knew that the perpetrator of the crime intended to commit a homicide; and [¶] B. The defendant intended to aid and abet the perpetrator in committing a homicide." In light of the jury charge as a whole, any possible confusion created by giving CALCRIM No. 400 was harmless because other instructions correctly instructed the jury on the intent required to convict Pinola of murder under an aider and abettor theory.

7   (Ans. Ex. 6 at 9.)

8          The omission of an instruction is less likely to be prejudicial than a

9   misstatement of the law.  See Walker v. Endell, 850 F.2d at 475-76 (citing

10  Henderson v. Kibbe, 431 U.S. at 155).  Thus, a habeas petitioner whose claim

11  involves a failure to give a particular instruction bears an "'especially heavy

12  burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting

13  Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).  The significance of the omission of

14  such an instruction may be evaluated by comparison with the instructions that were

15  given.  Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001) (quoting

16  Henderson, 431 U.S. at 156); see id. at 972 (due process violation found in capital

17  case where petitioner demonstrated that application of the wrong statute at his

18  sentencing infected the proceeding with the jury's potential confusion regarding its

19  discretion to impose a life or death sentence).

20         In light of the instructions that were given as a whole, the Court finds that

21  Petitioner was not prejudiced by the omission of clarifying instructions.  As

22  discussed by the state appellate court, the remainder of the instructions on aider and

23  abettor liability made it clear that the jury must find specific intent as to each

24  defendant and perpetrator.  Specifically, the jury had to first conclude that Reeves

25  intended to commit the crime of first degree.  See supra at 11.  Then in order to find

26  Petitioner guilty as an aider and abettor, the jury had to find that Petitioner intended

27  to aid and abet Reeves in committing first degree murder.  Id.  Furthermore, even

28  where intoxication was a factor, the jury was again instructed that Petitioner had to

United States District Court
For the Northern District of California

1    know that Reeves intended to commit a homicide, and that Petitioner intended to aid

2    and abet Reeves in committing a homicide.  Id.  The state court was not

3    unreasonable in concluding harmless error because "other instructions correctly

4    instructed the jury on the intent required to convict [Petitioner] of murder under an

5    aider and abettor theory."  Id. at 12.  Petitioner has failed to meet the "'especially

6    heavy burden'" of showing constitutional error by the trial court's omission of

7    clarifying instructions.  See  Villafuerte, 111 F.3d at 624.  Accordingly, the state

8    court's rejection of this claim was not contrary to, or involved an unreasonable

9    application of, Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  Petitioner is not

10    entitled to habeas relief on this claim.

11          B.      **Admission of Prior Conduct (Claim 2)**

12          Petitioner's second claim is that the trial court erred when it admitted

13    evidence that Petitioner kicked a man in 2008.  The state appellate court rejected this

14    claim and found no error:

15          Pinola contends the trial court also erred when it admitted evidence
      of an incident about two months before Knight's murder in which
16    Pinola repeatedly and viciously kicked an older man who was lying
      helpless on the street.  Because the two incidents were sufficiently
17    similar, the court did not abuse its discretion when it admitted
      Pinola's earlier assault to support an inference of intent and identity.

18
19          "Evidence that a defendant has committed crimes other than those
      currently charged is not admissible to prove that the defendant is a
20    person of bad character or has a criminal disposition; but evidence of
      uncharged crimes is admissible to prove, among other things, the
21    identity of the perpetrator of the charged crimes, the existence of a
      common design or plan, or the intent with which the perpetrator
22    acted in the commission of the charged crimes. [Citation.] Evidence
      of uncharged crimes is admissible to prove identity, common design
23    or plan, or intent only if the charged and uncharged crimes are
      sufficiently similar to support a rational inference of identity,
24    common design or plan, or intent." (*People v. Kipp* (1998) 18
      Cal.4th 349, 369; *People v. Foster* (2010) 50 Cal.4th 1301, 1328;
25    Evid. Code, § 1101.) [FN2]

26          FN2.   Further statutory references are to the Evidence Code.

27          The California Supreme Court has long recognized ""that if a
      person acts similarly in similar situations, he probably harbors the
28    same intent in each instance" [citations], and that such prior conduct
      may be relevant circumstantial evidence of the actor's most recent

United States District Court
For the Northern District of California

intent.  The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution.'" (*People v. Rowland* (1992) 4 Cal.4th 238, 261.)  "'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.]... In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance."'"' (*People v. Foster, supra,* 50 Cal.4th at p. 1328, quoting *People v. Ewoldt* (1994) Cal.4th 380, 402.)  On the other hand, "'[t]he greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity.... [T]he uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] "The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature."'"' (*Ibid.*)

If the prior conduct evidence is sufficiently similar to the charged crime that it is relevant to the defendant's intent, common plan, or identity, the trial court must then consider whether its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice under section 352.  We review the trial court's rulings under sections 1101 and 352 for abuse of discretion.  (*People v. Foster, supra,* 50 Cal.4th at p. 1328.)

Here, in both incidents Pinola violently assaulted an older man, a stranger, as he lay helpless on the ground.  Both assaults took place in the same vicinity, in public, and occurred only two months apart. On both occasions Pinola viciously and repeatedly kicked his prone victim in the midsection. Both victims suffered broken ribs.

Pinola admitted he had no motive to assault the first victim other than "just because," and he did a victory dance during the attack. Similarly, according to his own testimony, Pinola went to the tracks with Reeves the night of Knight's murder because he likes fights, was looking for some action and thought it would be a good show. In light of these parallels, the court did not abuse its discretion when it ruled that evidence of the prior incident was relevant to show both intent and identity.

The trial court's ruling that the evidence of the prior assault was not substantially more prejudicial than probative was also well within its discretion.  The testimony about the earlier beating was no more inflammatory than the evidence about the attack on Knight.  No photographs or other graphic evidence of the first victim were put in evidence, and, unlike Knight, the prior victim survived.  The jurors were told Pinola was on bail awaiting sentencing for the earlier assault when Knight was killed, so there was no danger they might be inclined to punish him for the uncharged crime whether or not they believed him guilty of murdering Knight.  (See *People v. Ewoldt, supra,* 7 Cal.4th at p. 405.)  The prior act evidence was properly admitted.

(Ans. Ex. 6 at 9-11.)

Permitting a jury to hear evidence of prior crimes or bad acts may violate due process.  See Marshall v. Lonberger, 459 U.S. 422, 438-39 n.6 (1983); Fritchie v. McCarthy, 664 F.2d 208, 212 (9th Cir. 1981) (citing Spencer v. Texas, 385 U.S. 554, 561 (1967)).  A state court's procedural or evidentiary ruling is not subject to federal habeas review, however, unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).  Accordingly, a federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986).

The Ninth Circuit has held that the admission of other crimes evidence violates due process where there are no permissible inferences the jury can draw from the evidence (in other words, no inference other than conduct in conformity therewith).  See McKinney v. Rees, 993 F.2d 1378, 1384 (9th Cir. 1993); Jammal, 926 F.2d at 920.  But it is generally upheld where: (1) there is sufficient proof that the defendant committed the prior act; (2) the prior act is not too remote in time; (3) the prior act is similar (if admitted to show intent); (4) the prior act is used to prove a material element; and (5) the probative value of admitting evidence of the prior act is not substantially outweighed by any prejudice the defendant may suffer as a result of its admission.  See McDowell v. Calderon, 107 F.3d 1351, 1366 (9th Cir.) (sentencer may rely on prior criminal conduct not resulting in a conviction if the evidence has "some minimal indicium of reliability beyond mere allegation"), amended, 116 F.3d 364 (9th Cir. 1997), vacated in part by 130 F.3d 833, 835 (9th Cir. 1997) (en banc).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Here, the state court's admission of the prior bad act was not arbitrary or so

2  prejudicial that it rendered the trial fundamentally unfair.  See Walters, 45 F.3d at

3  1357.  Evaluating the factors under McDowell, 107 F.3d at 1366, the Court is not

4  convinced that the state court's admission of the prior bad act violated due process.

5  First of all, there was no dispute over whether Petitioner actually committed the

6  prior bad act.  Secondly, the incident was not too remote in time as it occurred just

7  two months before Knight's murder.  The incident was sufficiently similar to

8  Knight's murder to show intent: Petitioner, with no motive, had repeatedly and

9  viciously kicked a man who was lying helpless in the street, and he admitted that he

10  had accompanied Reeves to the tracks because he "likes fights, was looking for

11  some action and thought it would be a good show."  See supra at 11.  The state court

12  also reasonably determined that the incident was properly admitted to prove intent

13  and identity, which are both material elements of first degree murder.  Id.  Lastly,

14  there was no outweighing prejudicial effect over its probative value: no photographs

15  or graphic evidence of the first victim were put in evidence, the first victim survived,

16  and the jury was aware that Petitioner was already awaiting sentencing for the first

17  assault and therefore not likely inclined to punish him for an uncharged crime.  Id.

18  Based on this analysis, it cannot be said that the admission of the evidence deprived

19  Petitioner of a fundamentally fair trial guaranteed by due process.  See Pulley, 465

20  U.S. at 41.  Accordingly, the state court's rejection of this claim was not contrary to,

21  or involved an unreasonable application of, Supreme Court precedent.  28 U.S.C. §

22  2254(d)(1).  Petitioner is not entitled to habeas relief on this claim.

23    D.    **Cumulative Error (Claim 4)**

24    Petitioner's last claim is that he is entitled to habeas relief based on the

25  cumulative effect of the alleged state court errors.  In some cases, although no single

26  trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of

27  several errors may still prejudice a defendant so much that his conviction must be

28  overturned.  See, e.g., Alcala v. Woodford, 334 F.3d 862, 893-895 (9th Cir. 2003)

United States District Court

For the Northern District of California

1   (reversing conviction where multiple constitutional errors hindered defendant's

2   efforts to challenge every important element of proof offered by prosecution).

3   However, where there is no single constitutional error existing, nothing can

4   accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292

5   F.3d 939, 957 (9th Cir. 2002).

6          Here, Petitioner has not demonstrated that there was even one constitutional

7   error.  Petitioner may disagree with the decisions of the state courts, but he has not

8   shown that they were unreasonable under clearly established federal law.

9   Accordingly, his claim of cumulative error must be denied.

10

11                                  **CONCLUSION**

12          After a careful review of the record and pertinent law, the Court concludes

13   that the Petition for a Writ of Habeas Corpus must be **DENIED**.

14          Further, a Certificate of Appealability is **DENIED**.  See Rule 11(a) of the

15   Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial

16   showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Nor has

17   Petitioner demonstrated that "reasonable jurists would find the district court's

18   assessment of the constitutional claims debatable or wrong." Slack v. McDaniel,

19   529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of

20   Appealability in this Court but may seek a certificate from the Court of Appeals

21   under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the

22   Rules Governing Section 2254 Cases.

23          The Clerk shall terminate any pending motions, enter judgment in favor of

24   Respondent, and close the file.

25          **IT IS SO ORDERED.**

26   DATED:  _____11/20/2014_____          _____

27                                         EDWARD J. DAVILA
                                           United States District Judge
28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


BRANDON A. PINOLA,

                Petitioner,

  v.

STATE OF CALIFORNIA,

                Respondent.

_____/

              Case Number: CV12-06050 EJD

              **CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____11/20/2014_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Brandon Pinola AD-2296
State Prison at Corcoran
P. O. Box 5242
Corcoran, CA 93212


Dated: _____11/20/2014_____

                         Richard W. Wieking, Clerk
                     /s/ By: Elizabeth Garcia, Deputy Clerk